UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20664-CIV-MORENO/O'SULLIVAN

OCTAVIUS MCLENDON,

　　　Movant,

v.

UNITED STATES OF AMERICA,

　　　Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) filed by Octavius McLendon (hereinafter "movant" or "Mr. McLendon"). This matter was referred to the undersigned by the Honorable Federico A. Moreno, United States District Judge. See Order of Referral to Magistrate Judge O'Sullivan Regarding Movant's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (DE# 3, 3/3/16). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) be **DENIED** for the reasons stated herein.

## PROCEDURAL HISTORY

**A.    Underlying Criminal Prosecution**

On June 28, 2012, a federal grand jury returned a superseding indictment against Mr. McLendon, Henry Lee Bryant and Daniel Mack, in Case No. 12-cr-20276-

FAM. See Superseding Indictment (DE# 38 in Case No. 12-cr-20276-FAM, 6/29/12). The Superseding Indictment charged all three defendants with conspiracy to possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 846 (Count 1), attempt to possess with intent to distribute cocaine on December 21, 2011 in violation of Title 21, United States Code, Section 846 (Count 2), attempt to possess with intent to distribute cocaine on January 14, 2012 in violation of Title 21, United States Code, Section 846 (Count 3) and using and possessing a firearm during and in relation to a drug trafficking crime in violation of Title 21, United States Code, Section 924(a)(1)(A) (Count 4). Id.

The charges in the Superseding Indictment stemmed from an undercover investigation wherein Mr. Bryant and Mr. McLendon transported nine kilograms of sham cocaine on December 21, 2011 and ten kilograms of sham cocaine on January 14, 2012. See Discussion, infra. Mr. Mack, a police officer, used his marked police vehicle to escort the sham cocaine. Id.

**B.    Evidence Presented at Trial**

During a four-day trial, the jury heard testimony that FBI Special Agent Dante Jackson (hereinafter "Agent Jackson") was working undercover as the general manager of a South Beach nightclub. Trial Transcript (DE# 144 at 73 in Case No. 12-cr-20276-FAM, 1/14/13) (hereinafter "Trial Transcript DE# 144"). On December 2, 2011, Agent Jackson met with Mr. Bryant at Agent Jackson's office at the nightclub. Trial Transcript (DE# 145 at 14 in Case No. 12-cr-20276-FAM, 1/14/13)). The audio and video equipment failed to record the December 2, 2011 meeting. Id. at 16.

At trial, Agent Jackson testified that the December 2, 2011 meeting:

was the first discussion we had about the transporting of drugs. I discussed with Mr. Bryant that I had an associate in New York who was a childhood friend that was involved in drug trafficking. I was laundering [this friend's] money through the nightclub, and [the friend] had proposed a deal to me to assist him with laundering some drug proceeds, and in exchange, I would be paid for that.

Trial Transcript DE# 145 at 14. Agent Jackson testified that Mr. Bryant "was fine with it" and had stated that "he had some associates who could assist and that he would be willing to proceed with it." Id. at 14-15.

At trial, Agent Jackson described the plan as follows:

The initial plan was to transport the drugs from a point in Miami to another destination, and [Mr. Bryant] would provide police officers to assist with escorting the drugs. The whole thing I presented to him was I didn't want the drugs being picked up by police, so we wanted police escorts to make sure the drugs made it from Point A to Point B.

Trial Transcript DE# 145 at 15. Agent Jackson testified that he "was very specific. [He] told [Mr. Bryant] that [he] wanted police officers with units and that they need[ed] to be in police uniform in case there [were] officers that would interdict the loads." Id.

Agent Jackson met with Mr. Bryant again on December 4, 2011. Trial Transcript DE# 145 at 16. The December 4, 2011 meeting was audio/visually recorded. The video of the December 4, 2011 meeting was played at trial. Id. at 16-17 (noting that video was played). During this meeting Mr. Bryant reported that he had recruited police officers to provide assistance, stating: "I got four and they said that they could give whoever I need[ed]. They all county guys. Plus, I got two Beach guys." Id. at 17-18.

On December 9, 2011, Agent Jackson and Mr. Bryant met at the nightclub. The December 9, 2011 meeting was audio/visually recorded and played for the jury. Trial Transcript DE# 145 at 25 (noting that video was played). During this meeting, Mr.

Bryant told Agent Jackson that he had two police officers who would provide security for the transportation of the drugs. Mr. Bryant stated that his "brother," meaning Mr. McLendon, would be involved. During the December 9, 2011 meeting with Mr. Bryant, Agent Jackson referred to the drugs as "keys," "kilos" and used the word "cocaine."

On December 10, 2011, Agent Jackson called Mr. Bryant. During this phone call, Agent Jackson used the word "dope" and Mr. Bryant abruptly hung up on him. This telephone call was recorded and played for the jury. Trial Transcript DE# 145 at 45 (noting that recording was played).

During a meeting on December 15, 2011, Mr. Bryant explained that the reason he had hung up on Agent Jackson was because Agent Jackson had used "the Coca Cola word." Agent Jackson expressed surprise and told Mr. Bryant that he usually used the word "t-shirts." The December 15, 2011 meeting was audio/visually recorded and played for the jury. Trial Transcript DE# 145 at 55 (noting that video was played).

The first transportation of sham cocaine took place on December 21, 2011. Baltimore Police Detective KayTee Tyson was brought into the investigation to play the role of Agent Jackson's drug trafficking friend.

Agent Jackson introduced Detective Tyson to Mr. Bryant at a restaurant on December 21, 2011. Later that day, Mr. Bryant arrived at Agent Jackson's office with Mr. McLendon. The purpose of this meeting was for Mr. Bryant and Mr. McLendon to pick up the sham cocaine which they would be delivering to a parked car in a mall parking lot. The December 21, 2011 meeting was audio/visually recorded and played for the jury. Trial Transcript DE# 145 at 72 (noting that video was played).

During this meeting Detective Tyson told Mr. Bryant and Mr. McLendon that they "needed to make sure that all nine of these get there," referring to the nine "bricks" of sham cocaine. Trial Transcript DE# 145 at 193-94. Detective Tyson also stated "[c]ause this money see what am saying." At trial, Detective Tyson explained that his "money" comment meant that:

> these nine kilograms of cocaine is worth a lot of money to me. So I need to make sure that when I'm giving them to you, that they need to get there. No ifs, ands, or buts about it. If you're telling me that you can do it, you need to be able to go through with it.

Id. at 194. The jury also heard testimony from Detective Tyson that the nine kilograms of cocaine would be worth approximately $300,000.00. Id.

The video of the December 21, 2011 meeting showed Detective Tyson marking the nine "bricks" of sham cocaine with a marker and handing each one to Agent Jackson to place inside a duffel bag. This handoff took place in the presence of Mr. Bryant and Mr. McLendon. At one point, Mr. Bryant and Mr. McLendon moved towards the desk where the duffel bag was resting so they could get a closer look at the "bricks" inside the duffel bag.

Detective Tyson again emphasized to Mr. Bryant and Mr. McLendon that he wanted the "bricks" to arrive exactly as they were packaged, stating "[n]o deviation, no taste, neither one of y'all get high right?" At trial, Detective Tyson explained why he had asked that question:

> That question was for, to make sure that -- I didn't want a person that gets high to transport my drugs for me, because at that point they could decide to go in, take some more, test it for themselves to see what it was, if it was good, if it wasn't.
>
> So I wanted to make sure that, look, I'm telling you already not to go into them. So I'm making sure now, you don't get high, so it won't be no

discrepancy with or any problems with getting to the point they need to get
to.

Trial Transcript DE# 145 at 196.

The video played for the jury at trial showed Agent Jackson handing the duffle

bag containing the nine "bricks" of sham cocaine to Mr. Bryant. Mr. Bryant and Mr.

McLendon then left Agent Jackson's office with the duffel bag. The jury was shown

photographs of the sham cocaine from the December 21, 2011 meeting. Trial Transcript

DE# 145 at 195 (noting the publishing of photographs of the kilograms of sham cocaine

used on December 21, 2011).

The jury also saw video of Mr. Bryant and Mr. McLendon returning to Agent

Jackson's office on the same day to receive a cash payment for the delivery of the

sham cocaine. Trial Transcript DE# 145 at 198 (noting that video was played). The

video showed Mr. Bryant and Mr. McLendon counting the money in Agent Jackson's

office.

At trial, Detective Tyson explained why he had marked each "brick" of sham

cocaine:

> With the marker what I was trying to do with the kilos were put initials on
> them, just to imply that, look, I'm putting this mark on them, putting this
> mark on them, so when they get to where they're going to, that's how they
> better arrive. So if this marker is gone off of there, then I know that
> something happened to the kilos because that's not how I gave them to
> you.

Trial Transcript DE# 145 at 193-94.

Detective Tyson testified that cocaine and heroin are packaged in the same

manner as the sham cocaine had been packaged and that money was not usually

packaged in this manner. Trial Transcript DE# 145 at 201-03. Detective Tyson

explained that "[w]hen you're delivering money to anyone, people want to make sure that what they're getting there is money." Id. Detective Tyson also testified that based on his experience, you would not leave large sums of money in a parked car in a mall parking lot in the drug business. Id. at 203-04.

The second transportation of sham cocaine took place on January 14, 2012. On the morning of January 14, 2012, Agent Jackson, Detective Tyson and Mr. Bryant met outside a restaurant. At this meeting, Agent Jackson and Detective Tyson would be introduced to Mr. Mack. While they were waiting for Mr. Mack to arrive, Agent Jackson expressed concern about whether Mr. Mack knew what was going on and Mr. Bryant assured Agent Jackson that Mr. Mack knew about it. A recording of this meeting was played for the jury at trial. Trial Transcript DE# 145 at 83 (noting that recording was played).

Mr. Mack arrived in his police car. He wore his police uniform but no name tag. Trial Transcript DE# 145 at 206. Mr. Bryant introduced Mr. Mack using the pseudonym "James." Id. Mr. Mack's firearm was attached to his uniform belt. Id. at 207.

The restaurant was crowded that morning and the meeting was moved to another restaurant. Trial Transcript DE# 145 at 207. Detective Tyson and Mr. Bryant rode together to the second restaurant. Id. at 207-08. During the car ride, Mr. Bryant expressed concern to Detective Tyson about the December 10, 2011 phone call wherein Agent Jackson had used the word "dope." Mr. Bryant also relayed to Detective Tyson his past experience: "Well, what, what I'm saying is, these guys, these guys used to move, we talkin' about kiloton . . . . You know what I'm saying? And, I've been doing this since I've been a f*cking shorty." Detective Tyson explained to the jury that Mr.

Bryant meant, he'd moved a lot of cocaine and that he'd been doing this for a long time. Id. at 214. The conversation between Mr. Bryant and Detective Tyson was audio recorded and played for the jury at trial. Id. at 208 (noting that recording was played).

Agent Jackson, Detective Tyson, Mr. Bryant and Mr. Mack sat at a table at the second restaurant. At trial, Detective Tyson testified that the purpose of the meeting was for Mr. Bryant to introduce the members of his team. Trial Transcript DE# 145 at 209. The meeting at the second restaurant was recorded and played for the jury at trial. Id. at 218 (noting that recording was played).

In the afternoon of January 14, 2012, Mr. Bryant and Mr. McLendon arrived at Agent Jackson's office at the nightclub. The meeting was audio/visually recorded and played for the jury at trial. Trial Transcript DE# 145 at 94 (noting that video was played). The video showed Agent Jackson placing a duffel bag on his desk and proceeding to fill the duffel bag with ten "bricks" of sham cocaine in Mr. Bryant and Mr. McLendon's presence. Mr. McLendon counted the "bricks" and commented that he "appreciated the smaller [bag] size" because it had "[b]etter maneuverability, less attention getter too." Agent Jackson handed the duffel bag containing the sham cocaine to Mr. McLendon. Mr. Bryant and Mr. McLendon confirmed their plans with Detective Tyson and Agent Jackson concerning where to deliver the duffel bag. Mr. Bryant and Mr. McLendon then left Agent Jackson's office. Id.

Later that day, Mr. Bryant and Mr. McLendon returned to the nightclub to collect a cash payment for the delivery of the sham cocaine. The audio/visual recording of Mr. Bryant and Mr. McLendon returning to Agent Jackson's office and collecting the cash

payment was played for the jury at trial. Trial Transcript DE# 145 at 97-98 (noting that video was played).

At trial, the government introduced into evidence photographs of the sham cocaine from the January 14, 2011 meeting, the duffel bag used to carry the sham cocaine and the actual "bricks" of sham cocaine used on January 14, 2012. Trial Transcript DE# 145 at 96-97 (publishing the aforementioned evidence).

## C.      The Defendants' Convictions

The jury convicted Mr. Bryant and Mr. McLendon on all four counts of the Superseding Indictment. See Verdicts (DE# 85, 87 in Case No. 12-cr-20276-FAM, 10/11/12). With respect to the firearm count, the jury found that Mr. Bryant and Mr. McLendon "possessed a firearm in furtherance of the drug-trafficking crime." Id. at 3. The jury convicted Mr. Mack on the conspiracy count, the January 14, 2012 attempt count and using a firearm during and in relation to the drug-trafficking crime. See Verdict (DE# 86 in Case No. 12-cr-20276-FAM, 10/11/12). Mr. Mack was acquitted of the December 21, 2011 attempt count. Id.

## D.      Sentencing

Mr. McLendon was sentenced to a total term of imprisonment of 248 months followed by a five-year term of supervised release. See Judgment in a Criminal Case (DE# 123 at 2-3 in Case No. 12-cr-20276-FAM, 12/21/12).

## E.      Direct Appeal

All three defendants filed notices of appeal. Mr. Bryant appealed his conviction and sentence. Mr. McLendon and Mr. Mack appealed only their convictions. On July 24,

2014, the Eleventh Circuit issued an opinion affirming the proceedings below. See United States v. Mack, 572 F. App'x 910 (11th Cir. 2014).

The Eleventh Circuit found that the evidence presented at trial was sufficient to support the defendants' convictions for both the drug charges and the firearm charge. Mack, 572 F. App'x at 917-26.

With respect to Mr. Mack's firearm conviction, the Eleventh Circuit noted that Mr. Mack was carrying a firearm on January 14, 2012, approximately two hours before the drug transportation, knew of the illegal nature of the conspiracy, understood his police officer status was necessary for his participation in the deal and that carrying a service weapon was necessary to facilitate the drug transportation "regardless of whether its purpose was to avoid interdiction from law enforcement or also to provide security for the cargo from potential thieves." Mack, 572 F. App'x at 922.

With respect to Mr. Bryant and Mr. McLendon, the Eleventh Circuit stated: "we have no trouble concluding that the evidence against Bryant and McLendon was sufficient to sustain a guilty verdict for their aiding and abetting in Mack's section 924(c) offense." Mack, 572 F. App'x at 924. The Eleventh Circuit noted that Mr. Bryant knew in advance that a firearm would be carried. Mr. Bryant recruited Mr. Mack when Agent Jackson asked for uniformed police officers and Mr. Mack arrived at the restaurant on the morning of January 14, 2012 with a visible service weapon on his person. Id. at 924-25. With respect to Mr. McLendon, the Eleventh Circuit stated that "a reasonable jury could have concluded that McLendon, to whom Bryant referred as his 'point man' to the

police officers and who was in a vehicle that was loaded with the drugs, believed that the police cruiser following closely over the course of eight or ten miles was driven by an armed police officer." Id. at 925.

The Eleventh Circuit issued its mandate on November 12, 2014. See Mandate (DE# 168 in Case No. 12-cr-20276-FAM, 11/12/14). The defendants sought certiorari review from the Supreme Court of the United States. The Supreme Court denied Mr. Bryant's petition on February 23, 2015 and Mr. McLendon and Mr. Mack's petitions on February 27, 2015. See Denials of Writs of Certiorari (DE# 174 in Case No. 12-cr-20276- FAM, 2/25/15); (DE# 175, 176 in Case No. 12-cr-20276-FAM, 3/2/15).

**F.      Motion for New Trial Based on Agent Jackson's Misconduct**

During the pendency of the appeal, the government disclosed to the defendants that Agent Jackson was under investigation for allegations arising out of his relationship with a former FBI confidential source. The former confidential source was later identified as Mani Chulpayev.

On October 8, 2015, Mr. Bryant and Mr. Mack filed motions for a new trial based on the government's disclosure of Agent Jackson's misconduct. See Defendant Henry Lee Bryant's Rule 33 Motion for New Trial Based on Newly Discovered Evidence with Incorporated Memorandum of Law, and Motions for Full Discovery, for an Evidentiary Hearing, and to Adopt the Corresponding Motions Filed or to be Filed by and on Behalf of Codefendants Mack & McLendon (DE# 181 in Case No. 12-cr-20276-FAM, 10/8/15); Defendant Daniel Mack's Motion for New Trial Pursuant to Fed. R. Crim. P. Rule 33 and Brady v. Maryland, 373 U.S. 83 (1963), and Request for Hearing (DE# 182 in Case No.

12-cr-20276-FAM, 10/8/15). Mr. McLendon filed his motion for new trial on October 13, 2015. See Defendant McLendon's Motion for New Trial and an Evidentiary Hearing and Supporting Memorandum of Law (DE# 187 in Case No. 12-cr-20276-FAM, 10/13/15).

On May 31, 2016 and June 2, 2016, the undersigned held an evidentiary hearing on the motions for new trial. See Minute Entries (DE# 252 in Case No. 12-cr-20276-FAM, 5/31/16); (DE# 255 in Case No. 12-cr-20276-FAM, 6/2/16). Following the evidentiary hearing, the undersigned allowed the parties to file supplemental briefs.

On October 27, 2016, the undersigned issued a Report and Recommendation recommending that the motions for new trial filed by Mr. Bryant and Mr. McLendon be denied. See Report and Recommendation (DE# 291 in Case No. 12-cr-20276-FAM, 10/27/16) (hereinafter "R&R"). The undersigned further recommended, that the motion for new trial filed by Mr. Mack be granted. Id.

The undersigned recommended that the Court deny Mr. Bryant and Mr. McLendon's motions for new trial because Mr. Bryant and Mr. McLendon had failed to meet the materiality prong of Brady. The undersigned noted that "'[t]he prejudice or materiality requirement is satisfied if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" R&R at 49-50 (quoting Allen v. Sec'y, Florida Dep't of Corr., 611 F.3d 740, 746 (11th Cir. 2010)).

The undersigned determined that Mr. Bryant could not meet the materiality prong. R&R at 52. The undersigned noted that the decision to change the focus of the investigation to a narcotics case was made without Agent Jackson's involvement, Detective Tyson testified at trial concerning the two transportations of sham cocaine and

the jury was shown audio and video recordings of Mr. Bryant's statements and actions. Id. at 50-51. Thus, "a significant amount of evidence that was presented at trial against Mr. Bryant was not dependent on Agent Jackson's credibility." Id. at 51.

Similarly, the undersigned concluded that Mr. McLendon was not entitled to a new trial under Brady because Mr. McLendon could not show that the newly disclosed evidence of Agent Jackson's misconduct was material in his case. R&R at 58. The undersigned noted that "there was ample evidence through audio-visual recordings and Detective Tyson's testimony to support the jury's verdict against Mr. McLendon even without Agent Jackson's testimony." Id.

With respect to Mr. Mack, however, the undersigned determined that "there [was] a reasonable probability that had evidence of Agent Jackson's misconduct been disclosed, the outcome of the trial would have been different . . . ." R&R at 61. The undersigned noted that "[t]he only reference to 't-shirts' made in Mr. Mack's presence occurred during a conversation between Mr. Mack and Agent Jackson." Id.

The undersigned rejected other arguments raised by the defendants. The undersigned found that Agent Jackson's misconduct did not undermine the quality of the investigation as a whole, noting that the decision to change the nature of the investigation to a narcotics investigation was made by agents other than Agent Jackson. R&R at 63-64. Although there was an equipment malfunction on December 2, 2011 which failed to record a meeting between Mr. Bryant and Mr. Jackson, the undersigned noted that other recorded meetings and conversations showed that Mr. Bryant was aware that he would be delivering narcotics on December 21, 2011 and January 14, 2012. Id. at 64. The undersigned found that Agent Jackson vouching for the existence

13

of the sham cocaine at trial was not material because another agent testified that she collected the evidence and gave it to the case agent at the conclusion of the investigation and the jury was shown photographs of the sham cocaine from December 21, 2011 and January 14, 2012. Id. at 64-65. The undersigned also found that there was no evidence of improper conduct by Detective Tyson. Id. at 65-66.

The defendants also sought relief under Rule 33 of the Federal Rules of Criminal Procedure. R&R at 66. The undersigned rejected the argument that the defendants were entitled to a new trial under Rule 33 because:

> all of the defendants ha[d] failed to show that evidence of Agent Jackson's misconduct was more than merely impeachment evidence. Additionally, Mr. Bryant and Mr. McLendon ha[d] failed to show that the withheld evidence was material to the issues before the Court and that it was such that a new trial would probably produce a different result.

Id. at 67.

Lastly, the undersigned rejected Mr. Bryant and Mr. McLendon's argument that if Mr. Mack was granted a new trial, Mr. Bryant and Mr. McLendon would also be entitled to a new trial on their firearm convictions. R&R at 74. The undersigned determined that Mr. Bryant and Mr. McLendon would not be entitled to a new trial because they "had not shown that confidence in their guilty verdicts for the firearm charge (Count 4) would be undermined," noting that "Mr. Mack would not be acquitted, he would merely be receiving a new trial." Id. at 74-75.

On December 16, 2016, the Court adopted the Report and Recommendation as to Mr. Bryant and Mr. McLendon only and denied Mr. Bryant and Mr. McLendon's motions for new trial. See Orders Adopting Report and Recommendation and Denying Motions for New Trial (DE# 300, 301 in Case No. 12-cr-20276-FAM, 2/16/16). The

Court did not adopt the Report and Recommendation with respect to Mr. Mack. See

Order Granting Defendant's Motion for New Trial on Counts 1 and 3 and Further

Granting the Government's Motion to Dismiss the Same Counts 1 and 3 and Vacating

the Sentences on Counts 1 and 3 (DE# 324 in Case No. 12-cr-20276-FAM, 4/25/17).

The Court's Order stated as follows:

> **Without adopting the Magistrate Judge's Report and
> Recommendation**, the Court accepts the joint agreement by the
> defendant and the government to grant the new trial. The Court also
> grants the government's motion to dismiss Counts 1 and 3. However, **the
> conviction and sentence of 60 months on Count 4 shall remain**. For
> clarity, an amended judgment on Count 4 shall be entered.

Id. (emphasis added). Thus, Mr. Mack's conviction and sentence on the firearm charge

were not disturbed.

**G.      Appeal of Order Denying the Motions for New Trial**

Mr. Bryant and Mr. McLendon appealed the denial of their motions for new trial.

On July 3, 2019, the Eleventh Circuit affirmed the proceedings below. See United

States v. Bryant, 780 F. App'x 738 (11th Cir. 2019), cert. denied sub nom. McLendon v.

United States, 141 S. Ct. 383, 208 L. Ed. 2d 102 (2020).

On appeal, Mr. Bryant and Mr. McLendon argued that they were entitled to a new

trial on their firearm convictions because the Report and Recommendation had

recommended that co-defendant Mack be granted a new trial on his firearm conviction.

Bryant, 780 F. App'x at 743. Mr. Bryant and Mr. McLendon also argued that the District

Court had erred in its determination that the evidence of Agent Jackson's misconduct

was not material under Brady. Id. The Eleventh Circuit rejected both arguments.

With respect to the first argument, the Eleventh Circuit noted that Mr. Mack was

not granted a new trial on the firearm charge. Bryant, 780 F. App'x at 743. Instead,

> [t]he Government and Mack agreed that Mack's § 924(c) conviction would
> stand, and the district court entered an order to this effect. Although the
> district court adopted the R & R in Defendants' cases, the district court
> never adopted the R & R in Mack's case. Instead, the district court's order
> accepting the Joint Resolution Agreement explicitly state[d] it was not
> adopting the R & R in Mack's case.

Id. The Eleventh Circuit found that the fact that Mr. Mack was not granted a new trial

was "fatal" to Mr. Bryant and Mr. McLendon's argument. Id.

As to the materiality argument, the Eleventh Circuit noted that Agent Jackson's

misconduct was unrelated to Mr. Bryant and Mr. McLendon's case. Bryant, 780 F. App'x

at 744. The Eleventh Circuit found this fact "highly relevant and worth emphasizing,"

though not dispositive. Id. The Eleventh Circuit noted that while the evidence of Agent

Jackson's misconduct "would not have been admitted as substantive evidence at

Defendants' trial," it "could have potentially [been used by the defendants] . . . to

impeach Agent Jackson." Id. Nonetheless, the Eleventh Circuit noted that in the instant

case, "there [was] very little for which the jury had to take Jackson's word because they

heard the recordings themselves." Id.

With respect to Mr. Bryant, the Eleventh Circuit concluded that "[t]he likelihood of

a different result, had Agent Jackson's misconduct been disclosed, [was] not nearly

great enough to undermine . . . confidence in the jury verdict regarding Defendant

Bryant's drug convictions." Bryant, 780 F. App'x at 745. The Eleventh Circuit noted that

the evidence against Mr. Bryant was "overwhelming" and cited the December 9, 2011

recorded meeting where Agent Jackson made comments to Mr. Bryant about moving

"ten kilos," indicated that "they were 'dealing with ten keys,' which Agent Jackson stated

was 'not a [sic] incre-, incredible amount of cocaine" and that "Bryant ended up

transporting 'nine' ["bricks"] on December 21, 2011, and then another ten wrapped in

similar packaging on January 14, 2012." Id. (quoting record) (emphasis in opinion). Additionally, Detective Tyson provided testimony at trial. Based on the nature of the evidence against Mr. Bryant, the Eleventh Circuit concluded that "[t]o the extent Agent Jackson's trial testimony corroborated this evidence, it was cumulative." Id.

As to Mr. McLendon's drug convictions, the Eleventh Circuit similarly found that "had Agent Jackson's misconduct been disclosed, there [was] not a reasonable probability that the result of the proceeding would have been different." Bryant, 780 F. App'x at 747. The Eleventh Circuit observed that "[g]iven there was a plan to transport 'cocaine' and Bryant recruited McLendon to help execute this plan, the evidence [was] strong that McLendon knew they were attempting to transport cocaine." Id. The Eleventh Circuit noted that "McLendon in fact showed up for both transports, where he watched Agent Jackson load wrapped 'bricks' of sham cocaine into a duffel bag. McLendon clearly saw and counted the bricks. He completed the transports and returned to the office to receive his payment." Id. The jury also heard testimony from Detective Tyson that money would not have been packaged in the same manner the sham cocaine had been packaged because "'[w]hen you're delivering money to anyone, people want to make sure that what they're getting there is money'" and that "one package like what McLendon and Bryant transported usually represents one kilogram of cocaine or heroin." Id. (quoting Trial Transcript DE# 145 at 202-03). Lastly, the Eleventh Circuit noted that during the December 21, 2011 meeting, "[Detective] Tyson asked Defendants, '[n]o deviation, no taste, no test, neither one of y'all get high right?,'" which "would not have made sense had Defendants thought they were transporting money, as money is not 'tasted' or 'tested' even figuratively." Id. The jury heard testimony from

Detective Tyson explaining why he had made that comment: "'[I] didn't want a person that gets high to transport my drugs for me, because at that point they could decide to go in, take some more, test it for themselves to see what it was, if it was good, if it wasn't.'" Id. In light of the evidence against Mr. McLendon, the Eleventh Circuit concluded that the disclosure of Agent Jackson's misconduct did not support a reasonable probability of a different result. Id.

The Eleventh Circuit did not address the issue of whether Agent Jackson's misconduct was material under Brady with respect to Mr. Bryant and Mr. McLendon's firearm convictions because "[n]ot once [did] Defendants make the separate argument that, had Agent Jackson's misconduct been disclosed, there [was] a reasonable probability that the result of the proceeding in regard to Defendants' gun convictions would have been different or engage in the fact-specific analysis required to make this argument." Bryant, 780 F. App'x at 748.

The Eleventh Circuit issued a mandate on February 18, 2020. See Mandate (DE# 358 in Case No. 12-cr-20276-FAM, 2/18/20). Mr. Bryant and Mr. McLendon sought a writ of certiorari from the Supreme Court. On October 5, 2020, the Supreme Court denied the petition for writ of certiorari. See Denial of Writ of Certiorari (DE# 365 in Case No. 12-cr-20276-FAM, 10/8/20).

## H.    The Instant Proceedings

In the interim, on February 23, 2016, Mr. McLendon filed the instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) (hereinafter "Motion"). On September 30, 2020, Mr. McLendon filed a Supplement to Claim for Relief under 28 U.S.C. § 2255 (DE# 39,

9/30/20) (hereinafter "Supplement"). The government filed its response in opposition on December 15, 2020. <u>See</u> United States' Response in Opposition to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (DE# 44, 12/15/20) (hereinafter "Response"). Mr. McLendon filed a reply on January 4, 2021. <u>See</u> Reply to Government's Response to 28 U.S.C. § 2255 Motion (DE# 45, 1/4/21) (hereinafter "Reply").

This matter is ripe for adjudication.

## <u>REQUEST FOR AN EVIDENTIARY HEARING</u>

In his Motion, Mr. McLendon requests, in a conclusory manner, an evidentiary hearing. <u>See</u> Motion at 14 (requesting that the Court "vacate [Mr. McLendon's] conviction and sentence and conduct an evidentiary hearing). In his Supplement, Mr. McLendon asks for "a further hearing on the issue of relief solely on the § 924(c) count, where the government did not previously oppose Movant's argument on this point." Supplement at 9.[1] In his Reply, Mr. McLendon states that the Court should either hold an evidentiary hearing on the status of the government's investigation of Agent Jackson or "in lieu of a further evidentiary hearing, the Court should direct the government to provide a comprehensive update on any further developments in the investigation that was still on going as of the time four years ago when the hearing was conducted on the motion for new trial." Reply at 9.

---

[1] It is unclear whether Mr. McLendon is requesting an evidentiary hearing or a non-evidentiary hearing in his Supplement.

The government objects to Mr. McLendon's request for an evidentiary hearing. Response at 16. The government states that no evidentiary hearing is warranted because the record establishes that Mr. McLendon's claims lack merit. Id. at 16-17.

"The standard for determining [the movant's] right to an evidentiary hearing is 'whether the [movant's] allegations, if proved, would establish the right' to habeas relief." United States v. Godwin, 910 F. Supp. 596, 602 (M.D. Fla. 1995) (quoting Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc)). "[A] district court is not required to grant . . . an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the [movant] is entitled to no relief.'" Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (quoting 28 U.S.C. § 2255(b)).

The undersigned finds that Mr. McLendon is not entitled to an evidentiary hearing because, as discussed below, the record reveals that he is not entitled to the relief sought.

Mr. McLendon is also not entitled to an evidentiary hearing to obtain an update on the government's investigation of Agent Jackson. The Court, in adopting the Report and Recommendation as to Mr. McLendon and denying Mr. McLendon's motion for new trial, already determined that Agent Jackson's misconduct was not material to Mr. McLendon's case because "there was ample evidence through audio-visual recordings and Detective Tyson's testimony to support the jury's verdict against Mr. McLendon even without Agent Jackson's testimony." R&R at 58 (adopted as to Mr. McLendon in Order Adopting Report and Recommendation and Denying Motion for New Trial (DE# 301 in Case No. 12-cr-20276-FAM, 2/16/16)). This materiality finding was affirmed by the Eleventh Circuit on appeal as to Mr. McLendon's drug convictions. See Bryant, 780

F. App'x at 747 (stating that "had Agent Jackson's misconduct been disclosed, there [was] not a reasonable probability that the result of the proceeding would have been different" as to the drug convictions).[2] Mr. McLendon has not demonstrated how an evidentiary hearing or an updated disclosure on the investigation of Agent Jackson's misconduct would affect his conviction or sentence.

Accordingly, no evidentiary hearing will be held in this case and the undersigned will not recommend an updated disclosure of the investigation into Agent Jackson's misconduct.

## ANALYSIS

In his Motion, Mr. McLendon raised two grounds for relief: (1) the government's nondisclosure of Agent Jackson's misconduct and (2) the government's nondisclosure of money laundering activities at the nightclub. Motion at 4-5. In his Supplement, Mr. McLendon added that because the undersigned had recommended that Mr. Mack receive a new trial on the counts for which Mr. Mack had been convicted, Mr. McLendon was likewise entitled to a new trial on the firearm charge because the jury had convicted Mr. McLendon as an aider and abettor to Mr. Mack, who had been convicted as the principal. Supplement at 3-9. The undersigned will address these arguments below.

---

[2] The Eleventh Circuit did not have the opportunity to address the materiality argument with respect to Mr. McLendon's firearm conviction because "[n]ot once [did] Defendants make the separate argument that, had Agent Jackson's misconduct been disclosed, there [was] a reasonable probability that the result of the proceeding in regard to Defendants' gun convictions would have been different or engage in the fact-specific analysis required to make this argument." Bryant, 780 F. App'x at 748.

**A.      Ground One: The Government's Non-Disclosure of Agent Jackson's Misconduct**

**1.      Request for New Trial Based on Agent Jackson's Misconduct**

In Ground One, Mr. McLendon argued that "[t]he government concealed crucial exculpatory and impeaching evidence concerning" Agent Jackson's misconduct. Motion at 4. Mr. McLendon asserted that the nature of Agent Jackson's misconduct "went beyond mere impeachment to undermine the foundations of the investigation and prosecution." Id.

As noted above, on October 27, 2016, the undersigned issued a Report and Recommendation recommending that Mr. McLendon's motion for new trial based on Agent Jackson's misconduct be denied. R&R at 75. The Report and Recommendation found that evidence of Agent Jackson's misconduct was impeachment evidence only and "that Mr. McLendon was not entitled to a new trial under Brady because Mr. McLendon could not show that the . . . evidence of Agent Jackson's misconduct was material in his case." Id. at 41, 58. The Report and Recommendation noted that "there was ample evidence through audio-visual recordings and Detective Tyson's testimony to support the jury's verdict against Mr. McLendon even without Agent Jackson's testimony." Id. The District Court adopted the Report and Recommendation as to Mr. McLendon. See Order Adopting Report and Recommendation and Denying Motion for New Trial (DE# 301 in Case No. 12-cr-20276-FAM, 2/16/16).

Mr. McLendon had a full and fair opportunity to raise errors on appeal. The Eleventh Circuit did not overturn the District Court's denial of Mr. McLendon's motion for new trial based on Agent Jackson's misconduct. See United States v. Bryant, 780 F. App'x 738 (11th Cir. 2019). Thus, the issue of whether confidence in the jury's verdict

against Mr. McLendon was affected by Agent Jackson's misconduct has been fully

adjudicated and Mr. McLendon cannot revisit this issue in the instant section 2255

proceeding. See United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (stating

that "[o]nce a matter has been decided adversely to a defendant on direct appeal it

cannot be re-litigated in a collateral attack under section 2255.") (internal quotation

marks omitted).

 Mr. McLendon is not entitled to relief on this ground.

### 2. Request for New Trial Based on Mr. McLendon's Conviction as an Aider and Abettor

 In his Supplement, Mr. McLendon added an additional argument to Ground One.

See Supplement at 3-9. Mr. McLendon argued that because the Report and

Recommendation had recommended that Mr. Mack (the principal) receive a new trial,

Mr. McLendon (who was convicted of aiding and abetting Mr. Mack) is also entitled to a

new trial on the firearm charge. The government asserts that this argument is untimely

and lacks merit. Response at 1.

#### i. Timeliness

 The government moves to strike the Supplement as an improper amendment to

Mr. McLendon's section 2255 Motion. Response at 1. The government argues that the

Supplement:

> is nothing more than an unveiled attempt to have this [C]ourt re-hash the
> lengthy and thorough evidentiary hearing held in the criminal case, seeks
> to have this [C]ourt reverse it's [sic] decision denying [Mr. McLendon]'s
> motion for new trial, and place in question the [D]istrict [C]ourt's order,
> which denied [Mr. McLendon]'s motion for new trial, and granted Mack's
> motion for new trial on the drug charges (Counts 1 and 3), but not as to
> Count 4 the firearm (§ 924(c)) conviction.

Id. at 1-2. The government asserts that the Supplement "is time barred and does not

relate back to the initial [Motion]." Id. at 7.

In his Reply, Mr. McLendon maintains that his supplement is not time barred. Reply at 5. Mr. McLendon argues that (1) "this issue . . . is a core component of the claim of materiality and prejudice resulting from the constitutional violation;" (2) "the § 2255 motion, even before it was supplemented by events occurring since the filing of the motion . . . clearly articulated that the prejudice of the due process violation affected the evidence as to all counts, not just those resting on the Movant's personal commission of conduct, but the § 924(c) conviction as well;" (3) "it is exactly the same Brady violation [as asserted in the initial Motion], but the need for further consideration arises from the fact that the vicarious liability component addressed in the Report [and Recommendation] was not resolved by the district court and thus is appropriate for reconsideration at this time and (4) "the entirety of the Brady violation claim (including the vicarious liability component) is part of one core set of operative facts—one Brady violation." Reply at 5-6.

An amended claim relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set out or attempted to be set out -- in the original pleading. . . ." Fed. R. Civ. P. 15(c)(1)(B). The Eleventh Circuit has noted that "Congress intended Rule 15(c) to be used for a relatively narrow purpose; it did not inten[d] for the rule to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003).

The undersigned finds that the argument raised in Mr. McLendon's Supplement relates back to his original Motion. Both the argument raised in the Motion and the

argument raised in the Supplement stem from the government's nondisclosure of Agent Jackson's misconduct. The argument raised in the Motion addresses how Agent Jackson's misconduct would have directly affected Mr. McLendon's drug and firearm convictions. The argument raised in the Supplement addresses how Agent Jackson's misconduct would have directly affected Mr. Mack's firearm conviction, and by extension, Mr. McLendon's firearm conviction, as the aider-and-abettor. Accordingly, the Court should consider the argument raised in Mr. McLendon's Supplement.

Although the Court should consider the argument raised in Mr. McLendon's Supplement, this argument does not entitle Mr. McLendon to relief for the reasons discussed below.

### ii.    Merit

Mr. McLendon asserts that:

> [b]ecause the [D]istrict [C]ourt has not yet ruled on the question of whether, as found by the Magistrate Judge's report, the <u>Brady</u> violation in this case tainted the convictions of co-defendant Mack (and particularly Mack's § 924(c) conviction on Count 4 of the indictment), the United States Court of Appeals for the Eleventh Circuit held that the unresolved issue of whether the Magistrate Judge's ruling on the § 924(c) conviction entered against co-defendant Mack was correct precluded reliance by the Movant on the Magistrate Judge's finding of a <u>Brady</u> violation undermining Mack's conviction.

Supplement at 2 (citing <u>Bryant</u>, 780 F. App'x at 743).

The undersigned disagrees with Mr. McLendon's summary of the <u>Bryant</u> decision to the extent Mr. McLendon suggests that matters related to the motions for new trial remain pending before this Court. The Eleventh Circuit stated in its decision that Mr. McLendon and Mr. Bryant could not rely on the Report and Recommendation's recommendation that Mr. Mack be granted a new trial,

because the Report and Recommendation was never adopted by the District

Court:

> Defendants Bryant and McLendon appeal the district court's order adopting the magistrate judge's R & R, arguing the district court erred in two ways. First, Defendants argue that because the magistrate judge recommended that Mack be granted a new trial on the § 924(c) charge, Defendants are entitled to a new trial on that charge as well. Mack was charged as the principal of the § 924(c) charge, while Defendants were charged on an aiding and abetting theory. Defendants argue "the alleged 'principal' has been granted a new trial and so also should the alleged 'aiders.'". . . **Fatal to this claim, however, is the fact that Mack was not granted a new trial on the § 924(c) charge.** The Government and Mack agreed that Mack's § 924(c) conviction would stand, and the district court entered an order to this effect. **Although the district court adopted the R & R in Defendants' cases, the district court never adopted the R & R in Mack's case. Instead, the district court's order accepting the Joint Resolution Agreement explicitly states it was not adopting the R & R in Mack's case.** This first argument, therefore, fails.

Bryant, 780 F. App'x at 743 (emphasis added; citation to the record omitted).

There are no matters pending before the District Court which relate to the

motions for new trial. As previously noted, the District Court adopted the Report and

Recommendation as to Mr. McLendon and Mr. Bryant only. See Orders Adopting

Report and Recommendation and Denying Motions for New Trial (DE# 300, 301 in

Case No. 12-cr-20276-FAM, 2/16/16). The District Court expressly stated that it was not

adopting the Report and Recommendation as to Mr. Mack. See Order Granting

Defendant's Motion for New Trial on Counts 1 and 3 and Further Granting the

Government's Motion to Dismiss the Same Counts 1 and 3 and Vacating the Sentences

on Counts 1 and 3 (DE# 324 in Case No. 12-cr-20276-FAM, 4/25/17). While Mr.

McLendon is technically correct that the District Court "did not adopt or overrule the

Report [and Recommendation] with regard to the conclusions concerning co-defendant

Mack," Supplement at 2, that does not mean that there are unresolved issues in the

underlying criminal proceeding for the District Court to decide.

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In the underlying criminal proceeding, the District Court chose to adopt the Report and Recommendation as to Mr. McLendon and Mr. Bryant and not to adopt the Report and Recommendation as to Mr. Mack. The District Court thus disposed of all pending motions for new trial and there is no reason for the District Court, at this juncture, to revisit the Report and Recommendation.

Mr. McLendon also argues that:

> [t]he government may not use a constitutional violation affecting its case as to the principal's guilt in order to obtain a conviction of an aider/abettor. **The constitutional violation in proving the principal's crime clearly affects the jury's evaluation of the evidence against the person charged merely with vicarious liability**.

> Thus, the government cannot use the happenstance of a joint trial to deny the defendant charged as an aider/abettor due process on the question of the principal's liability.

Reply at 3 (emphasis added); id. at 7 ("[g]iven the constitutional violation affecting the jury's consideration of the evidence against [Mr. Mack], the conviction of accused aider/abettor McLendon simply cannot stand.").

The undersigned's Report and Recommendation, which was adopted as to Mr. McLendon, carefully reviewed the evidence presented at trial and found that "[b]ecause Mr. Bryant and Mr. McLendon ha[d] failed to show that evidence of Agent Jackson's misconduct was material in their case, they ha[d] not shown a Brady violation." R&R at 66. The Report and Recommendation specifically addressed Mr. Bryant and Mr. McLendon's argument that if Mr. Mack was granted a new trial, Mr. Bryant and Mr.

McLendon would also be entitled to a new trial on their firearm convictions. Id. at 74. The undersigned determined that Mr. McLendon and Mr. Bryant would not be entitled to a new trial because they "had not shown that confidence in their guilty verdicts for the firearm charge (Count 4) would be undermined," noting that "Mr. Mack would not be acquitted, he would merely be receiving a new trial." Id. at 74-75. The undersigned further determined that "confidence in Mr. Bryant and Mr. McLendon's convictions [did] not hinge on Mr. Mack's conviction." Id. at 75.

To the extent that Mr. McLendon disagreed with the Report and Recommendation as adopted by the District Court—in particular, the Report and Recommendation's determination that "confidence in Mr. Bryant and Mr. McLendon's convictions [did] not hinge on Mr. Mack's conviction," R&R at 75—Mr. McLendon had an opportunity to raise this issue on appeal. Therefore, Mr. McLendon may not raise this argument in the instant section 2255 proceeding. See Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating that "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding").[3]

Mr. McLendon is not entitled to relief on this ground.

**B. Ground Two: The Government's Non-Disclosure of Money Laundering Activities at the Nightclub**

In Ground Two, Mr. McLendon argued that the government should have

---

[3] There are two exceptions to the procedural bar rule. "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Lynn, 365 F.3d at 1234. The second exception requires a showing of actual innocence. Id. The record does not support either exception.

disclosed that "the champagne bar from which [Mr. McLendon] transported packages he believed contained money . . . was heavily involved in non-drug money laundering that was to be prosecuted by the government." Motion at 5. According to Mr. McLendon this "money laundering evidence would have shown to the jury how reasonable it was for a person . . . to believe that it was likely tax evasion and money laundering that created the need to remove casino-like under-the-table profits from the club via covert means." Id.

The government maintains that Ground Two is procedurally barred because it was already addressed by the District Court and the Eleventh Circuit:

> The Court also addressed and rejected the basis for Petitioner's claim that [the] government failed to disclose exculpatory evidence that Club Dolce was a non-drug money laundering operation. The Court reviewed the trial testimony of Detective Tyson and the presented audio-visual recordings at trial and found that such evidence, independent of UC Jackson's testimony, supported the jury's guilty verdict that [Mr. McLendon] believed that the packages he transported contained cocaine not money. In its R&R, the Magistrate Judge stated that the jury heard and was free to rely upon testimony from Det. Tyson . . . "(1) that cocaine is packaged in the same way as the sham cocaine was packaged in the instant case; (2) money would not be packaged [that] way and (3) large sums of money would not be left in a parked car in a mall parking lot in the drug business." (DE CR 291 at 57). The district court adopted the R&R as to Petitioner McLendon and Bryant and entered an order denying defendants' motion for new trial. (DE CR 300, 301). The Court of Appeals affirmed the [D]istrict [C]ourt's order finding no Brady Violations.

Response at 12-13.

Mr. McLendon is not entitled to relief on Ground Two. In the Report and Recommendation, the undersigned noted that the jury heard argument that Mr. McLendon believed he was transporting money:

> nothing precluded Mr. McLendon from making the argument at trial that he believed he was transporting money, not drugs. In fact, Mr. McLendon's counsel told the jury in closing argument that the government had failed to

> show Mr. McLendon knew he was transporting drugs and cited to the "this is money" statement by Detective Tyson. <u>See</u> Trial Transcript (DE# 147 at 111, 1/14/13). At trial, Detective Tyson provided an explanation for his statement "this is money," <u>see</u> Trial Transcript (DE# 145 at 194, 1/14/13), and the jury was entitled to believe Detective Tyson's explanation.

R&R at 57, n. 38. The undersigned determined that "there was ample evidence through audio-visual recordings and Detective Tyson's testimony to support the jury's verdict against Mr. McLendon even without Agent Jackson's testimony" and that "Mr. McLendon ha[d] failed to show a reasonable probability that the outcome of the trial would have been different." <u>Id.</u> at 58. The undersigned's Report and Recommendation was adopted as to Mr. McLendon. <u>See</u> Order Adopting Report and Recommendation and Denying Motion for New Trial (DE# 301 in Case No. 12-cr-20276-FAM, 2/16/16). The Eleventh Circuit did not overturn the District Court's denial of Mr. McLendon's motion for new trial. <u>See</u> <u>United States v. Bryant</u>, 780 F. App'x 738 (11th Cir. 2019).

Mr. McLendon is not entitled to relief on this ground.

## **RECOMMENDATION**

Based on the foregoing, the undersigned respectfully RECOMMENDS that the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) be **DENIED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon

grounds of plain error if necessary in the interest of justice. See 28 U.S.C § 636(b)(1);

Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir.

2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794

(11th Cir. 1989); 11th Cir. R. 3-1 (2016).

     RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this **30th** day of March, 2021.

                  _____

                  JOHN J. O'SULLIVAN
                  CHIEF UNITED STATES MAGISTRATE JUDGE